UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WESTFIELD INSURANCE CO.,

        Plaintiff,

v.

MILAN 2000 FURNISHINGS, LTD.,
HIKMAT RAFOO a/k/a NICK RAFOO,
and TALMER BANCORP, INC. f/k/a
FIRST MICHIGAN BANK f/k/a PEOPLES
STATE BANK,

        Defendants,

_____ /

TALMER BANCORP, INC. f/k/a                Case No. 11-12773
FIRST MICHIGAN BANK f/k/a               Honorable Patrick J. Duggan
PEOPLES STATE BANK,

        Counter-Plaintiff,

v.

WESTFIELD INSURANCE CO.,

        Counter-Defendant,

_____/

TALMER BANCORP, INC. f/k/a
FIRST MICHIGAN BANK f/k/a
PEOPLES STATE BANK,

        Cross-Plaintiff,

v.

MILAN 2000 FURNISHINGS, LTD and
HIKMAT RAFOO a/k/a NICK RAFOO.

        Cross-Defendants.

_____/

**OPINION AND ORDER DENYING DEFENDANT/COUNTER-PLAINTIFF**

## TALMER BANCORP'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF/COUNTER-DEFENDANT WESTFIELD INSURANCE COMPANY AND GRANTING WESTFIELD INSURANCE COMPANY'S CROSS-MOTION FOR SUMMARY JUDGMENT

This action raises the question *inter alia* of Talmer Bancorp, Inc.'s right as a loss payee to certain insurance proceeds under an insurance policy issued by Westfield Insurance Company ("Westfield") to Milan 2000 Furnishings, Limited ("Milan 2000"). Presently before the Court is Talmer Bancorp Inc.'s motion and Westfield's cross-motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docs. 38 and 49.) As more fully outlined below, the motions have been fully briefed and the Court held a hearing with respect to the motions on September 27, 2012.

## I.     Factual and Procedural Background

Milan 2000 was a furniture retailer operating in southeast Michigan. Its principal shareholder is Hikmat Rafoo a/k/a Nick Rafoo ("Mr. Rafoo").

Milan 2000 obtained financing for its business through bank loans, including three loans issued by Peoples State Bank which were secured by real estate and business inventory of Milan 2000. The secured property included Milan 2000's warehouse at 51124 Sass Road in Chesterfield, Michigan, along with the inventory located there. The loan agreements required Milan 2000 to insure its collateral.

Milan 2000 procured insurance covering its real estate and inventory through a Westfield business owners package policy, No. BOP 3160735 (the "Policy"), which was in effect between July 2007 and 2008. (Westfield's Resp. Ex. 1.) Peoples State Bank is

2

identified as a mortgagee and loss payee with respect to the Sass Road warehouse building (identified as "Location 2" on the Policy) and the inventory stored therein.

Sometime in March 2008, the building and inventory at Location 2 sustained damage.  Milan 2000 claimed that the damage was caused by burglars and timely reported the loss to Westfield through a public adjuster hired by Milan 2000 named Craig Becker. Westfield assigned claims handler Tim Call to the file in June 2008.

Mr. Call began to investigate Milan 2000's claim.  He reviewed the Policy and visited Michigan to inspect Location 2. During his deposition in this case, Mr. Call testified that he spoke with Mr. Rafoo during this visit, and Mr. Rafoo indicated that no party had any security interest in the inventory at Location 2.  (Talmer's Mot. Ex. E at 44-45.)  Mr. Call also made demands for documentation, although for reasons Mr. Call could not recall during his deposition in this matter, all of the documents requested related to mortgages on Milan 2000's equipment and building at 20292 Middlebelt Road in Livonia, Michigan (identified as "Location 4" on the Policy).

At some time prior to November 2008, Westfield began to suspect fraud by Milan 2000.  Westfield therefore asked Milan 2000 to complete sworn proof of loss statements for the building and inventory losses.  (*See id*. Ex. H.)  In January 2009, Milan 2000 submitted two Proofs of Loss: one for the loss to the building and one for the loss to the inventory.  (*Id*. Ex. J.)  Milan 2000 also provided Westfield with a general release, granting Westfield permission to obtain any and all records it desired from Milan 2000's lenders.  (*Id*.)

Milan 2000's Proof of Loss as to the inventory only identified Virginia Grzech as a loss payee. (*Id*. Ex. J.) This was an error, because Mr. Rafoo's debts to Ms. Grzech had been paid prior to the loss. Westfield's suspicions of fraud were not allayed by the Proofs of Loss. Therefore Westfield rejected the Proof of Loss regarding the inventory claim pending receipt of additional documentation and information to substantiate the amount of damages claimed. (*Id*. Ex. I.). Westfield also rejected, in part, Milan 2000's Proof of Loss regarding damage to the building, issuing a check in partial payment for the loss. (*Id*.) Peoples State Bank was listed as a payee on the check. (*Id*.)

Westfield thereafter continued to investigate Milan 2000's claimed inventory loss. Westfield requested more information regarding security interests in Milan 2000's Middlebelt Road property ("Location 4"). Mr. Rafoo submitted to two Examinations Under Oath in April and October 2009, at which he was not asked about any mortgages, liens, or security interests regarding the inventory at Location 2. As part of its continued investigation, Mr. Call also asked for and received Milan 2000's insurance applications from its insurance agent, Szura Agency. The applications identify Peoples State Bank as a loss payee for the inventory and mortgagee for the building at Location 2. (Talmer's Mot. Ex. 0.)

In October 2010, Westfield concluded that it did not have sufficient evidence of fraud to deny Milan 2000's claim for damage to inventory at Location 2, although it did not accept Milan 2000's valuation of the damaged property. Therefore, on October 10, it issued a check to Milan 2000 for $228,044. Peoples State Bank was not listed as a payee

4

on this check.

On February 11, 2011, the FDIC closed Peoples State Bank and it was placed in receivership. On the same date, First Michigan Bank entered into a Purchase and Assumption Agreement ("Purchase Agreement") with the FDIC to purchase certain assets of Peoples State Bank. (Westfield's Resp. Ex. 12.) On April 22, 2011, First Michigan Bank changed its name to Talmer Bancorp, Inc. ("Talmer").

At some point in time, Talmer discovered the payment to Milan 2000, which did not identify Peoples State Bank as a payee. Talmer then asked Westfield to re-issue the check, which Westfield refused to do.

Thereafter, on June 27, 2011, Westfield initiated this lawsuit by filing a Complaint against Milan 2000, Mr. Rafoo, and Talmer. (Doc. 1.) In its Complaint, Westfield alleges that Milan 2000 and Mr. Rafoo made a material misrepresentation in the Proof of Loss by failing to identify Peoples State Bank as a loss payee and wrongfully sought an appraisal concerning the value of the damaged inventory. In Count I of its Complaint, Westfield seeks a judgment declaring the following: (1) Milan 2000 and Mr. Rafoo engaged in concealment, misrepresentation and/or fraud thereby voiding coverage under the Policy; (2) Talmer is not entitled to payment of any amounts by Westfield; (3) Westfield has no obligation to indemnify Milan 2000 for any further amounts; (4) Milan 2000 is required to return to Westfield all monies paid by Westfield arising out of the alleged theft loss; (5) Westfield is no longer obligated to participate in the appraisal process and any award that may be issued is null and void; and, (6) the appraisal shall be

5

suspended pending completion of this litigation.  In Counts II and III, respectively, Westfield alleges that Milan 2000 and Mr. Rafoo breached the insurance contract and engaged in concealment, misrepresentation and fraud.  Westfield alleges unjust enrichment and seeks to pierce the corporate veil to hold Mr. Rafoo liable for the payments Westfield made to Milan 2000 in Count IV of its Complaint.  Finally, in Count V, Westfield seeks to place the monies paid to Milan 2000 in constructive trust.

On August 26, 2011, Talmer filed a Counter-Complaint against Westfield and a Cross-Complaint against Milan 2000 and Mr. Rafoo.  (Doc. 11.)  In Count I, Talmer seeks a declaration as to the parties' rights to the $228,044.00 payment Westfield made to Milan 2000 on October 10, 2010.    In Count II and III, respectively, Talmer alleges that Westfield breached the insurance contract and engaged in conversion of monies rightfully belonging to Talmer.  Talmer further asserts breach of contract (Count IV), conversion (Count V), and unjust enrichment (Count VI) claims against Milan 2000 and Mr. Rafoo.

On June 6, 2012, Talmer filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 as to Count I of Westfield's Complaint and Counts I, II, and III of Talmer's Counter-Complaint (the claims against Westfield).  (Doc. 38.)  At Westfield's request, the time for briefing Talmer's motion was extended to allow the parties to complete discovery.  On August 6, 2012, Westfield filed a response to Talmer's motion and, in the same pleading, a cross-motion for summary judgment with respect to the declaratory relief it seeks against Talmer.  (Doc. 49.)  On August 20, 2012, Milan 2000 and Mr. Rafoo filed a "concurrence" with Talmer's summary judgment motion.

(Doc. 53.)  Concurring with Talmer's assertion that Westfield cannot establish fraud by

Milan 2000 and/or Mr. Rafoo, Milan 2000 and Mr. Rafoo request in their "concurrence"

that the Court dismiss Westfield's Complaint in its entirety.  Talmer filed a reply brief in

support of its motion and response to Westfield's cross-motion on August 28, 2012.

(Doc. 54.)  Westfield filed a reply brief in support of its cross-motion on September 18,

2012.  (Doc. 55.)  Lastly, on the same date, Westfield filed a brief in opposition to Milan

2000's and Mr. Rafoo's "concurrence," arguing that it inappropriately requests relief that

exceeds the scope of Talmer's motion.  (Doc. 56.)

## II.    Westfield's Cross-Motion and Milan 2000's and Mr. Rafoo's "Concurrence"

Rule 5(e) of the Eastern District of Michigan's Electronic Filing Policies and

Procedures states in part that "a response or reply to a motion must not be combined with

a counter-motion."  The rule further provides that "[p]apers filed in violation of this rule

will be stricken."  Nevertheless, the Court's disposition of Talmer's motion for summary

judgment essentially resolves Westfield's cross-motion for summary judgment.

Moreover, at this juncture, the cross-motion has been fully briefed by the parties.  The

Court therefore will consider Westfield's motion in this instance.

However the Court will not address the request for relief in Milan 2000's and Mr.

Rafoo's "concurrence," as it exceeds the scope of Talmer's summary judgment motion.

## III.   Standard for Summary Judgment

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate

"if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact."  *Id.* at 323, 106 S. Ct. at 2553.  Once the movant meets this burden, the "nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e)). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1).  The court must accept as true the non-movant's evidence and draw "all justifiable inferences"

8

in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255, 106 S. Ct. at 2513.

**IV.     Applicable Law and Analysis**

    **A.     Whether Talmer has Standing to Seek Recovery from Westfield**

        In its cross-motion for summary judgment, Westfield challenges Talmer's standing to seek recovery under the insurance policy.  Westfield first argues that Peoples State Bank, not Talmer, is named as loss payee and that there is no evidence that Talmer purchased Peoples State Bank's rights, claims, and cause of action against Westfield. Westfield interprets Section 3.5 of the Purchase Agreement (*see* Westfield's Resp. Ex. 12) as excluding from the assets Talmer acquired from the FDIC, any proceeds payable with respect to any insurance.  Westfield next argues that even if the Purchase Agreement included People State Bank's rights, claims, and cause of action against Westfield, the anti-assignment clause in the insurance policy forbids such a transfer without Westfield's consent.  Finally, Westfield argues that Talmer is not a third-party beneficiary of the insurance contract.  The Court finds no merit to Westfield's arguments.

        First, the plain language of the Purchase Agreement does not exclude Peoples State Bank's rights, claims, or cause of action against Westfield from the assets purchased by Talmer.  Section 3.5(a), relied upon by Westfield, excludes from the assets purchased:

> any financial institution bonds, banker's blanket bonds, or public liability, fire, extended coverage insurance policy, *bank owned* life insurance or any other insurance policy *of the Failed Bank*, or premium refund, unearned premium derived from cancellation, or any proceeds payable *with respect to any of the foregoing*.

(Westfield's Resp. Ex. 12, emphasis added.)  Peoples State Bank's rights, claims, or

9

cause of action against Westfield do not arise from a public liability, fire, or extended

coverage insurance policy or a policy of the failed bank; instead, they arise from Milan

2000's business owners coverage insurance policy. As such, Talmer's claim to the

disputed proceeds does not fall within the excluded assets.[1]

Westfield similarly misinterprets the insurance policy's anti-assignment clause.

This clause, entitled "Transfer of Your Rights and Duties Under This Policy," reads:

> *Your* rights and duties under this policy may not be transferred without our
> written consent except in the case of death of an individual Named Insured.
>
> If you die, your rights and duties will be transferred to your legal
> representative but only while acting within the scope of duties as your legal
> representative. Until your legal representative is appointed, anyone having
> proper temporary custody of your property will have your rights and duties
> but only with respect to that property.

(Westfield's Resp. Ex. 1 § L, emphasis added.) The Policy defines "you" and "your" as

"refer[ring] to the Named Insured shown in the Declarations." (*Id.* at 000027.) The

named insured is Milan 2000. Thus this provision only prohibits the transfer of Milan

2000's rights and duties under the Policy. It does not prohibit the assignment of Peoples

---

[1]The Purchase Agreement excludes from the assets purchased any assets retained by the FDIC. (Westfield's Resp. Ex. 12 § 3.6.) Talmer provides an affidavit from David B. Wilson, a Resolutions and Receivership Specialist at the FDIC, in which Mr. Wilson declares that the FDIC intends an assuming institution to assume the right and obligation to collect on loans made by the failed institution. (Talmer's Reply Ex. 1 ¶ 5.) Mr. Wilson explains that "[t]his includes the right, if any, to obtain payment from insurance companies for loss to collateral securing these loans." (*Id.*) More specifically, Mr. Wilson states that "[t]he FDIC does not contend, nor has it ever contended, that the right to sue Westfield for losses to collateral was retained by the FDIC. To the contrary, such rights were transferred to Talmer." (*Id.* ¶ 6.)

State Bank's interest as a loss payee.

Finally, this Court finds that Talmer is a third-party beneficiary of the insurance contract between Milan 2000 and Westfield.  In Michigan, third-party beneficiary status is defined by statute:

> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.
>
> (1) a promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise has undertaken to give or to do or refrain from doing something directly to or for said person.

Mich. Comp. Laws § 600.1405.  As the Michigan Supreme Court has interpreted this section, it "does not empower just any person who benefits from a contract to enforce it. Rather, it states that a person is a third-party beneficiary of a contract only when the promisor undertakes an obligation 'directly' to or for the person." *Brunsell v. Zeeland*, 467 Mich. 293, 297, 651 N.W.2d 388, 390 (Mich. 2002).  The Court reasoned: "This language indicates the Legislature's intent to assure that contracting parties are clearly aware that the scope of their contractual undertakings encompasses a third party, directly referred to in the contract, before the third party is able to enforce the contract."  *Id*.  A court "looks at the contract itself to determine whether a party is an intended third-party beneficiary."  *Schafer Oil Co. v. Universal Underwriters Ins. Co.*, 820 F. Supp. 321, 324 (E.D. Mich. 1993) (citing *Rieth–Riley Constr. Co., Inc. v. Dep't of Transp.*, 136 Mich. App. 425, 357 N.W.2d 62, 64–65 (Mich. Ct. App. 1984)).

11

As a loss payee, Talmer does not have a distinct contract with Westfield.  *See, e.g.,* *Certain Underwriters of Lloyds, London v. U.S. Indus. Servs., LLC*, 825 F. Supp. 2d. 882, 887-888 (E.D. Mich. 2011) (citing cases and explaining the distinction between an "ordinary loss payable clause" which does not create a contract between the lienholder and the insurer and a "standard mortgage clause" which constitutes a separate contract between the insurer and mortgagee that is not subject to most of the defenses an insurer might have against a mortgagor).  Nevertheless, the Policy's Loss Payable provision unquestionably imposes an affirmative duty on Westfield with respect to identified loss payees.  The provision states:

> For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:
>
> 1. Adjust losses with you
>
> 2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

(Westfield's Resp. Ex. 1 at 000060.)  Peoples State Bank is identified on the declarations as a loss payee with respect to Location 2.  (*Id.* at 000016.)  Thus the Policy evinces an express promise by Westfield to pay any claim for loss or damage to Milan 2000 and named loss payees (e.g. Peoples State Bank), jointly.  This is consistent with the holding in other cases that loss payees are third-party beneficiaries.  *See, e.g., Wunschel v. Transcontinental Ins. Co.*, 839 P.2d 64, 69-70 (Kan. Ct. App. 1992) (citing cases to conclude that "the concept of a loss payee suing on an insurance contract as a third-party beneficiary is not a novel one"); *Monroe Bank v. State Farm Fire and Cas. Co.*, No. 1:10-

12

cv-923, 2010 WL 4668428, at *1 (S.D. Ind. Nov. 9, 2010) (citing *Am. Underwriters Grp., Inc. v. Williamson*, 496 N.E.2d 807, 811 (Ind. Ct. App. 1986)).

For these reasons, the Court rejects Westfield's argument that Talmer lacks standing to seek recovery from Westfield under the Policy.

### B.    Whether Talmer is Entitled to Payment Under the Policy

The Loss Payable provision of the Policy required Westfield to make payments "as interests may appear" in the Policy.  Talmer contends that the Policy expressly identified Peoples State Bank's interest in the inventory at Location 2 and thus, regardless of Milan 2000's failure to identify the bank as a loss payee on the Proof of Loss, Westfield was on notice regarding its right to payment.  Westfield argues that, under the terms of the Policy, Milan 2000's failure to identify Peoples State Bank as a loss payee on the Proof of Loss voided Westfield's obligation to make payment to Milan 2000 or Talmer.

As mentioned above, a loss payee does not have a separate contract with the insurer and its right of recovery is no greater than the right of the insured.  *U.S. Indus. Servs., LLC*, 825 F. Supp. 2d. at 887-888; *see also Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 383, 486 N.W.2d 600, 602 (1992).  As a result, "a breach of the conditions of the policy by the insured [will] prevent recovery by [a] lienholder." *Foremost Ins.*, 439 Mich. at 383, 486 N.W.2d at 602.  Westfield contends that Milan 2000 breached the conditions of the Policy by concealing or misrepresenting material facts or committed fraud or false swearing by submitting a Proof of Loss that did not identify Peoples State Bank as a loss payee.

13

A provision of the Policy provides that it is void if the insured "intentionally conceal[s] or misrepresent[s] a material fact" regarding the policy, covered property, the insured's interest in the covered property, or a claim under the Policy. (Westfield's Resp. Ex. 1 at 000024.) Nevertheless, Talmer argues that Westfield could not have reasonably relied on Milan 2000's omission on the Proof of Loss, because the Policy itself (specifically the declarations) and other documents clearly identified Peoples State Bank as a loss payee.[2] Westfield responds that reasonable reliance is not an element of an insurer's fraud and false swearing defense. Westfield argues that those elements that are necessary to invoke the defense are satisfied.

Michigan courts distinguish a claim alleging fraud in the procurement of an insurance contract and fraud committed with respect to a proof of loss. "Fraudulent procurement has all the normal fraud elements, while fraudulent proof of loss, also called 'false swearing,' does not have justifiable reliance as one of its elements." *Rayis v. Shelby Mut. Ins. Co. of Shelby, Ohio*, 80 Mich. App. 387, 392, 264 N.W.2d 5, 7 (1978) (citing *Campbell v. Great Lakes Ins. Co.*, 228 Mich. 636, 638, 200 N.W. 457 (1924); *see*

---

[2]In its opening brief, Talmer also states that "it appears that [Mr. Rafoo] simply misunderstood the Proof of Loss form or made a clerical error." (Talmer's Br. in Supp. of Mot. at 7-8.) Talmer, however, does not present any evidence to support this statement and does not mention it again in its pleadings as a basis for rejecting Westfield's claim of fraud. In its reply brief, in response to evidence cited by Westfield to "undermine[]" Talmer's characterization of the omission, Talmer argues that this issue cannot be resolved without Mr. Rafoo's testimony. (Talmer's Reply Br. at 13.) Thus the Court does not understand Talmer to be asserting that there is an absence of a genuine issue of material fact concerning Mr. Rafoo's intent.

14

*also J.C. Wyckoff & Assoc., Inc. v. Std. Fire Ins. Co.*, 936 F.2d 1474, 1484-85 (6th Cir. 1991). A false swearing defense requires proof of the following: (1) that the insured made a misrepresentation that was (a) material and (b) false; (2) the insured knew that the representation was false when he made it or it was made recklessly, without any knowledge of its truth; and (3) that the insured made the material misrepresentation with the intention that the insurer would act upon it. *Rayis*, 80 Mich. App. at 393, 264 N.W.2d at 8 (citing *West v. Farm Bureau Ins. Co. of Michigan*, 63 Mich. App. 279, 282, 234 N.W.2d 485, 487 (1975)).

Talmer nevertheless argues that an insurer must demonstrate that it reasonably relied on misrepresentations in an insured's proof of loss when the insurer makes its own investigation of the loss and makes payment afterward. Talmer further argues that when an insurer has actual knowledge of a misstatement, it cannot avoid payment based on the misstatement. To support its arguments, Talmer relies on the Michigan Supreme Court's decisions in *Montgomery Ward & Co. v. Williams*, 830 Mich. 275, 47 N.W.2d 607 (1951), and *Alma State Saving Bank v. Springfield Fire & Marine Insurance Company*, 268 Mich. 631, 256 N.W. 573 (1934).

In *Alma State Savings Bank ("Alma")*, under a fire insurance policy, the insurer covered real property and equipment of the insured on which the bank held a mortgage and secured interest, respectively. 268 Mich. at 632, 256 N.W. at 574. After a fire damaged the insured property, the insurer sent adjusters to examine the property. *Id*. Afterward, the adjusters made an offer in settlement of $50,000. *Id*. at 633, 256 N.W. at

15

574.  After the bank and the insured made a counter-offer of $65,000, no agreement was reached.  *Id*.  The insured subsequently prepared proofs of loss claiming a cash value of the property of about $41,000 and loss of $38,700, based on exaggerated costs to the insured of some machinery.  *Id*.

Thereafter the insurer, with its adjuster, agreed upon a damages value of $25,250 as a "supplemental compromise," which the bank subsequently attempted to collect.  *Id*.  The insurer indicated in response that it was unwilling to pay without further investigation and its agent subsequently became suspicious regarding the cause of the fire.  *Id*. at 634, 256 N.W. at 574.  When the bank then filed suit to recover the $25,250 supplemental compromise, the trial court ruled in its favor.

The Michigan Supreme Court affirmed, despite the insurer's claim of false swearing.  Although finding the insurance policy's "false swearing" clause effective, the Court held that it did not void the policy because there was no evidence that the insurer's adjuster had examined the proof of loss or relied upon it or any representations of the insured in fixing the amount of its settlement offer.  *Id*. at 635, 256 N.W. at 575.  The Court stated:

> [I]t is suggested that a false proof of loss does not avoid a policy where the insurer has not been misled thereby. . . . Obviously, such provision, like many others, may be waived by the insurer.  Where, disregarding the proof of loss, the insurer makes an adjustment with the insured, in which the proof of loss is not a factor, no reasonable construction of the contract, or view of its purpose, could permit the insurer to repudiate its agreed adjustment and hark back to the proof of loss.

*Id*. at 634-35, 256 N.W. at 575 (citing *Fuhrman v. Sun Ins. Office*, 180 Mich. 439, 147

N.W. 618 (1914)).

Contrary to Talmer's reading, this Court does not understand *Alma* to hold that reasonable reliance is an element of fraud or false swearing whenever an insurer investigates a claim. Instead, *Alma* only holds that an insurer cannot claim fraud or false swearing where it did not rely on the insured's proof of loss when evaluating the claim. The evidence does not indicate this to be the case in the present matter. In fact, the following facts suggest that Westfield relied on Milan 2000's representation in the Proof of Loss that the only loss payee with respect to Location 2's inventory was someone other than Peoples State bank: (1) the Policy declarations identify Peoples State Bank as a loss payee and mortgagee; (2) Milan 2000 claimed the bank as a mortgagee but not a loss payee on its claim forms; and, (3) Westfield included Peoples State Bank as a payee on the check reimbursing Milan 2000 for its real property loss but not as a loss payee on the check reimbursing Milan 2000 for its inventory losses. Further suggesting that Westfield relied on Milan 2000's representation regarding loss payees in its Proof of Loss is that when conducting its subsequent investigation, Westfield did not request any information from Milan 2000 concerning loss payees with respect to Location 2.

In *Williams*, the plaintiff attempted to recover payments it made to the defendant, its employee, under a health and accident plan for certain injuries the defendant incurred while at work. The plan provided that no benefits would be payable in connection with any accident for which the participant was entitled to payment under Michigan's workmen's compensation laws. 830 Mich. at 276-77, 47 N.W.2d at 608. Prior to leaving

17

work the evening he was injured, the employee reported his injuries to a manager who several days later provided the employee with a form to make a claim under the health and accident policy. *Id*. at 277, 47 N.W.2d at 608. The form noted that it should not be used "in [c]onnection with [i]njuries at [w]ork." *Id*. at 278, 47 N.W.2d at 608. On the form, the employee did not answer the question asking how and where the accident occurred. *Id*. The plaintiff subsequently paid its employee disability benefits under the plan. When the plaintiff filed suit in an attempt to recoup the payments, a jury ruled in favor of the employee.

The Michigan Supreme Court affirmed the judgment, concluding that from the testimony, "a jury could determine that [the] plaintiff [employer] through its agent [the manager] had knowledge of the time, place and nature of the injury." *Id*. at 284, 47 N.W.2d at 611. Although acknowledging that the evidence also suggested fraud, the Court indicated that "fraud is not perpetrated upon one who has full knowledge to the contrary of a representation." *Id*. (citing *Beverly v. Richards*, 255 Mich. 508, 238 N.W. 270 (1931)). The Court further indicated that the plaintiff is "held chargeable with the knowledge gained by its manager from the oral notice of injury he received on [the date the employee was injured]." *Id*. at 284, 47 N.W.2d at 612.

*Williams* does not control the present matter, however. There is no evidence to show that Westfield was aware of Peoples State Bank's status with respect to Milan 2000's inventory at Location 2 *at the time of the loss*. Westfield only knew that Peoples State Bank was a loss payee with respect to that property when the insurance policy was

18

issued and renewed.  As Westfield argues in its response brief, parties' interests to

property may change.  Thus the fact that Peoples State Bank was identified as a loss

payee at the time the Policy was issued did not mean that it still had an interest in the

inventory at Location 2 at the time of loss.

The applicable provisions in the Policy state:

**A. Loss Payable**

For Covered property in which both you and a Loss Payee shown in the
Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as
interests may appear.

(Westfield's Resp. Ex. 1 at 000060.)  "The phrase 'as its interest may appear' does not

refer to the mortgagee's interest in the property, but to the amount of debt owed to it that

is secured by the mortgage or deed of trust."  4 Lee R. Russ, Couch on Insurance § 65:17

(3d ed. 2011) (citing cases).  There may be no debt owed at the time of loss and thus a

prior identified mortgagee may no longer have any interest.  The Policy requires the

insured to complete a sworn proof of loss in the event of loss or damage from which *inter*

*alia* interests at the time of loss can be identified.  (*Id.* at 000040.)

Talmer argues that Westfield had a duty to investigate whether Peoples State Bank

retained an interest in the property at the time of loss based on the bank's inclusion as a

loss payee in the declarations.  However, the Michigan Supreme Court recently rejected

such a duty upon an insurer to investigate its insured's statements in *Titan Ins. Co. v.*

*Hyten*, 491 Mich. 547, 817 N.W.2d 562 (2012).  In *Titan Insurance*, the Court overruled a

long line of cases in which Michigan courts held that an insurer has a duty to investigate

the representations of an insured and cannot assert reasonable reliance on an insured's

misrepresentations where it had a means to determine that the representation was not true.

*See* id. at 555 n.4, 817 N.W.2d at 568 n.4.

　　　In doing so, the Court was responding to the court of appeals' statement below that

"'there can be no fraud where a person has the *means* to determine that a representation is

not true.'" *Id*. (quoting *Titan Ins.Co. v. Hyten*, 291 Mich. App. 445, 462, 805 N.W.2d 503

(2011) (quoting *Nieves v. Bell Indus., Inc.*, 204 Mich. App. 459, 464, 517 N.W.2d 235

(1994)).  The Court stated:

> When read in isolation, this statement might support the panel's conclusion
> that an insurer has a duty to investigate representations made by a potential
> insured.  However, when the statement is read in the full context of the
> *Nieves* opinion, as well as other precedent, it is clear that an insurer has no
> duty to investigate the representations of a potential insured.  The Court of
> Appeals in the instant case failed to recognize that in *Nieves*, and in the two
> cases relied on by *Nieves* in the pertinent portion of its opinion,
> *Montgomery Ward* . . . and *Webb v. First of Mich. Corp.*, 195 Mich. App.
> 470, 491 N.W.2d 851 (1992), the allegedly defrauded party was given
> direct information refuting the misrepresentations.  Ignoring information
> that contradicts a misrepresentation is considerably different than failing to
> affirmatively and actively investigate a representation.

*Id*.  The *Titan Insurance* Court went on to expressly overturn the Michigan Court of

Appeals' decision in *Mable Cleary Trust v. Edward-Marlah Muzyl Trust*, 262 Mich. App.

485, 501, 686 N.W.2d 770 (2004), to the extent the court was indicating "that a party has

an independent duty to investigate and corroborate representations."  *Id*.

20

Talmer fails to identify any information *directly* refuting Milan 2000's Proof of Loss that was provided to Westfield before it paid the insurance proceeds for the damaged inventory to Milan 2000, only.  Based on *Titan Insurance*, the Court therefore believes that Westfield had no independent duty to investigate and corroborate the Proof of Loss. However, even if Westfield had such a duty, the Court believes for the reasons set forth below that it was satisfied.

At the motion hearing, Talmer pointed out that sometime after Location 2 suffered damage, Milan 2000 renewed the Policy and Peoples State Bank again was identified as a loss payee with respect to the inventory stored at Location 2.  Talmer further pointed out that Mr. Call received a copy of the renewal document during his investigation.  Talmer argued that this information should have alerted Mr. Call to the bank's continued status as a loss payee at the time of the loss.  Even if this information created a duty upon Westfield to investigate People State Banks' interest further, the Court finds that it satisfied that duty when Mr. Call specifically asked Mr. Rafoo whether there were any interests in the personal property at Location 2 and Mr. Rafoo responded that there were none.  (Westfield's Mot. Ex. E at 44-45.)

For these reasons, the Court concludes that Talmer is not entitled to summary judgment on its claims against Westfield and that Westfield is entitled to the declaratory relief involving Talmer that it seeks in Count I of its Complaint.  Resolution of these claims does not require the Court to consider whether Westfield can void coverage under the Policy and recover the amount it paid Milan 2000 based on a fraud or false swearing

21

defense.[3] To the extent Westfield and Talmer seek to recover the proceeds Westfield paid

Milan 2000, they must pursue such relief through the claims and cross-claims,

respectively, filed against Milan 2000 and Mr. Rafoo.  Those claims, however, are not the

subject of the pending summary judgment motions.

## V.    Conclusion

The Court holds that Talmer is a third-party beneficiary to the insurance contract

between Westfield and Milan 2000 and therefore has standing to assert its claims against

Westfield.  The Court nevertheless concludes that Westfield did not breach the insurance

contract when it failed to name Peoples State Bank as a payee on the insurance proceeds

check that it sent Milan 2000.  Westfield did not have direct information refuting Milan

2000's Proof of Loss that omitted Peoples State Bank as a loss payee as of the date when

Milan 2000's inventory at Location 2 was damaged.

Accordingly,

---

[3]In its cross-motion for summary judgment, Westfield argues that Milan 2000's misrepresentation on the Proof of Loss voids the insurance policy and thus Talmer's right to recovery.  This is an alternative basis asserted by Westfield to deny Talmer's motion and grant its cross-motion for summary judgment; but based on the holding above, the Court need not resolve it.  In any event, the evidence submitted to the Court *thus far* does not demonstrate an absence of material fact with respect to the elements Westfield must establish to void the Policy on this basis.  Specifically, the parties have not adequately addressed whether Milan 2000 through Mr. Rafoo made the misrepresentation with the intention of deceiving Westfield.  *See Rayis v. Shelby Mut. Ins. Co.*, 80 Mich. App. 387, 264 N.W.2d 5, 8 (1978) (providing that the four elements of a fraud or false swearing defense are: (1) the insured made a misrepresentation; (2) the misrepresentation was material; (3) the insured either knew the misrepresentation was false at the time it was made or made the misrepresentation recklessly without any knowledge of its truth; and (4) the insured made the misrepresentation with the intention of deceiving the insurer.).

22

**IT IS ORDERED**, that Defendant/CounterClaimant Talmer Bancorp's Motion for Summary Judgment against Westfield Insurance is **DENIED**;

**IT IS FURTHER ORDERED**, that Westfield Insurance Company's Cross-Motion for Summary Judgment against Talmer Bancorp is **GRANTED**.


DATED: October 22, 2012                          s/PATRICK J. DUGGAN
                                                 UNITED STATES DISTRICT JUDGE


Copies to:
Michele A. Chapnick, Esq.
Matthew K. Casey, Esq.
Joe Sadler, Esq.
Kristina M. Araya, Esq.
William K. Cashen, Esq.