# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**Westfield Insurance Company,**

    Plaintiff/Counter-Defendant,　　Civil Action No.: 11-CV-12773

    vs.　　District Judge Patrick J. Duggan

　　Magistrate Judge Mona K. Majzoub

**Milan 2000 Furnishings, LTD,**
**Hikmat Rafoo, and Talmer Bancorp,**
**Inc. f/k/a First Michigan Bank f/k/a**
**Peoples State Bank**

    Defendants/Counter-Plaintiffs/
    Cross-Plaintiffs.
_____/

## OPINION AND ORDER GRANTING PLAINTIFF/COUNTER-DEFENDANT WESTFIELD INSURANCE COMPANY'S MOTIONS TO COMPEL [24] AND [25] AND DENYING DEFENDANT TALMER BANCORP INC'S MOTION FOR PROTECTIVE ORDER [43]

This matter comes before the Court on Plaintiff/Counter-Defendant Westfield Insurance Company's Motions to Compel (docket nos. 24 and 25) and Defendant Talmer Bancorp, Inc.'s Motion for Protective Order (docket no. 43). Defendants Milan 2000 Furnishings, LTD and Hikmat Rafoo (together "Milan 2000") filed a Response to Westfield's Motion to Compel (docket no. 30), as did Talmer (docket no. 29). Westfield filed its respective Replies in Support of its Motions to Compel. (Docket nos. 32 and 31.) The Parties then filed Joint Statements of Resolved and Unresolved Issues. (Docket nos. 33 and 34.) Westfield filed its response to Talmer's Motion for Protective Order (docket no. 46) and then filed a Supplemental Response (docket no. 47). These motions were referred to the undersigned for decision. (Docket nos. 26 and 44.) The parties have

1

fully briefed the motions; the Court has reviewed the pleadings and dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). The Court is now ready to rule pursuant to 28 U.S.C. § 636(b)(1)(A).

## I. Background

In March 2008, Defendant Milan 2000, a light-fixture retailer, was the victim of a break-in and lost several hundred thousand dollars in inventory. (Docket no. 30 at 5.) Milan 2000 had insured the inventory through Westfield. (Docket no. 24 at 2.) People's State Bank (whose assets Defendant Talmer purchased through a receivership with the FDIC) held an alleged security interest in the inventory. (Docket no. 29 at 2.) Following the break-in, Milan 2000, through insurance adjuster Globe Midwest, prepared and submitted a Proof of Loss form to Westfield. (Docket no. 30 at 5.) This Proof of Loss form did not include People's State Bank (or Talmer) as an additional insured. (*Id.*)

Although the insurance policy itself listed Talmer as an additional insured, Westfield did not include Talmer as an additional payee on the $228,044.00 check that it issued to Milan 2000. (*Id.*) Milan 2000 subsequently cashed the check and used the proceeds to make payments on various accounts with vendors, suppliers, and employees. (Docket no. 24-5 at 5.) A few months later, Talmer notified Westfield that it held the alleged security interest in Milan 2000's inventory and that it expected payment for the property loss. (*See* Docket no. 24 at 4.) The Parties' interests in the proceeds of the insurance payment and their respective liability related thereto is at the heart of this litigation.

## II. Governing Law

### A. Discovery Standard

The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad. *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998). Parties may obtain discovery on any matter that is not privileged and is relevant to any party's claim or defense if it is reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1). "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. But the scope of discovery is not unlimited. "District courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007).

Rules 33 and 34 allow a party to serve interrogatories and requests for production of documents on an opposing party. Fed.R.Civ.P. 33, 34. A party receiving these types of discovery requests has thirty days to respond with answers or objections. Fed.R.Civ.P. 33(b)(2), 34(b)(2)(A). If the receiving party fails to respond to interrogatories or RFPs, Rule 37 provides the party who sent the discovery the means to file a motion to compel. Fed.R.Civ.P. 37(a)(3)(B)(iii) and (iv). If a court grants a Rule 37 motion to compel, then the court must award reasonable expenses and attorney's fees to the successful party, unless the successful party did not confer in good faith before the motion, the opposing party's position was substantially justified, or other circumstances would make an award unjust. Fed.R.Civ.P. 37(A)(5)(a).

**B.    Protective Order**

Rule 26(c) allows the Court to issue protective orders for good cause shown to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including that

3

the disclosure or discovery not be had or that the disclosure or discovery be limited to certain matters. Fed.R.Civ.P. 26(c). The party seeking a protective order has the burden of showing that good cause exists for the order. *Nix v. Sword*, 11 Fed. App'x 498, 500 (6th Cir.2001). To show good cause, the movant must articulate specific facts showing clearly defined and serious injury resulting from the discovery sought and cannot rely on conclusory statements. *Id.*

**III.   Analysis**

    **A.   Westfield's Motion to Compel Directed to Milan 2000 [24]**

The use of the proceeds from the $228,044.00 check issued to Milan 2000 is at issue in Plaintiff's Motion to Compel Directed to Milan 2000. (Docket no. 24.) Specifically, Westfield asks that the Court compel Milan 2000 to answer Westfield's Interrogatory No. 3 subparts (d), (e), (f), and (g) in full and to provide documents in response to Request for Production of Documents Nos. 1 through 5.[1] (*See* Docket no. 33 at 3.) Interrogatory No. 3 states the following:

> 3.   Please provide an accounting of the use of all monies from the $228,044.00 of policy proceeds paid by Westfield to Milan 2000 on or about October 14, 2010. Include with your response the following:
>
> . . .
>
> d.   Please state in detail what you did with the proceeds paid to you (i.e. if cashed or placed in a bank account, please identify all bank accounts into which the money was placed;
>
> e.   Please itemize, list, outline or describe the use of all such proceeds, including but not limited to identifying all withdrawals of policy proceeds, all payments to any third parties, vendors, debtors or other to whom the policy proceeds were paid , the nature of the payment and the identify of what the proceeds were paid for;

---

[1] Just before the Parties filed their Joint Statement, Milan 2000 agreed to answer Interrogatory No. 3, subpart (d). (Docket no. 33 at 2-3.)

>  f.  The date of all such payments;
>
>  g.  The identity of all persons knowledgeable about the items referenced in subparts a-f above; and
>
>  h.  Please produce any and all documents supporting your responses to this interrogatory and all subparts.

(Docket no. 24-5 at 4.) Requests for Production Nos. 1 through 5 ask for: (1) federal income tax returns and extensions for Milan 2000, Rafoo, Y&H Properties, and R&Y, Inc. filed from 1996 through 2008; (2) Documents explaining a purported change in net operating loss by Milan 2000 in 2003; (3) documents supporting debts recorded on Milan 2000's books from 1996 through 2008; and (4) documents supporting purported loans by Rafoo to Milan 2000, Y&H Properties, and R&Y, Inc. From 1996 through 2008. (*Id.* at 6-7.) Milan 2000 answered Interrogatory No. 3 as follows:

> Respondent is unable to provide the requested information at this juncture. Respondent's business premises in Livonia was foreclosed upon and possession was taken whereat Respondent believes a majority of his business records were kept. Respondent is searching his other business locations, however, thus far Respondent has not located his business records. As bank records and accounting records have all been subpoenaed without objection, Respondent believes that those discovery requests will provide the information sought. Respondent has access to his old business premises on Van Dyke in Warren which was also foreclosed and sold, but has not located financial documents there. Respondent also currently has a storage location at 51124 Sass Road, Chesterfield, Michigan and is in the process of searching said location to determine if business records are available. To the best of Respondent's memory, the proceeds were used to pay professional fees to Mark Daily and Globe Midwest, possibly around $50,000.00 to repay a loan to the business from Bahir Yaquo, around $20,000.00 to one supplier, $10,000.00 each to two children of Respondent for past work, credit card expenses for the business, bank payments and other business expenses including laborers and service people.

(*Id.* at 5.) Likewise, Milan 2000 responded to Westfield's Requests for Production of Documents by generally stating that (1) it had no documents to produce; (2) subpoenas served by Westfield on Milan 2000's accountant, Talmer, and Comerica Bank "should" produce responsive documents; and (3) Milan 2000 was searching for records that "may" have been discarded by the entity that

5

foreclosed on its Livonia location. (*Id.* at 6-7.)

Notably, Milan 2000 does not argue that these requests are irrelevant, vague, overbroad, or unduly burdensome *per se.* (*See* docket no. 30.) Instead, it argues that Westfield either already has (or has requested) the same documents from third parties, and that asking Milan 2000 to produce them becomes unduly burdensome in light of the duplicative production, because Milan 2000 cannot afford the cost of production. (*See id.* at 7.) Westfield argues that a party's lack of financial resources is an insufficient basis for failure to participate in discovery. (Docket no. 32 at 5 (citing *New Jersey Sports Production, Inc., v. Eliades*, No. 06-1509, 2007 WL 1087189, at *2 (S.D.N.Y. Apr. 11, 2007) ("To be sure, Mr. Eliades is wrong to suggest that unrepresented defendants who lack resources have no obligation to respond in discovery.")).) Moreover, Westfield contends that Milan 2000's reliance on Westfield's subpoenas is improper and that Milan 2000 is in the best position to say what it did with the money or to determine who has that knowledge. (*Id.* at 4 (citing *Covad Comm'n. Co. v. Revonent, Inc.*, 258 F.R.D. 17, 20, (D.D.C. 2009)).)

The Court agrees with Westfield that, notwithstanding Milan 2000's financial situation, it still has an affirmative duty to participate in discovery to the extent that it is capable. This Court is not persuaded that Milan 2000 is incapable of taking the time necessary to analyze bank records, review what records are available, and provide complete responses to the best of its ability. But the Court also agrees that duplicative document production, including duplicative production by third parties, can be unreasonably cumulative. Therefore, the Court will grant Westfield's Motion to Compel, subject to certain limitations.[2]

---

[2]The Court will not order expenses pursuant to Rule 37(A)(5)(a) because the Court finds that Milan 2000's position was substantially justified.

6

a. The Court will order Milan 2000 to answer Interrogatory No. 3 no later than November 16, 2012. Milan 2000 must make reasonable inquiry with any individuals, agents, or organizations that may be able to supply this information and must answer each subpart of Interrogatory No. 3 as completely as possible. To achieve this end, the Court will order Westfield to provide for Milan 2000's review, copies of any bank records, tax records, and other records within Westfield's possession, custody or control that may assist Milan in completing its response. Milan 2000 must specifically describe and request any documents that it would like to review no later than November 1, 2012, and Westfield must provide copies of such documents no later than November 16, 2012.

b. The Court will order Milan 2000 to produce any documents within its possession, custody or control in response to Westfield's Request for Production of Documents Nos. 1 - 5 no later than November 16, 2012, but Milan 2000 will not be required to produce duplicate copies of any documents already in Westfield's possession. To achieve this end, Milan 2000 will provide Westfield with a detailed list of documents that are in the possession, custody, or control of Milan 2000 or its agents, on or before November 1, 2012, at which time Westfield will have 5 business days to identify and specifically request the production of any documents that third parties have not previously produced to Westfield, which documents will be produced by Milan 2000 on or before November 16, 2012.

c. If no such documents exist or if such documents are not in the possession, custody, or control of Milan 2000 or its agents, Milan 2000 must produce no later than


> > November 16, 2012, amended and signed responses stating that Milan 2000 does not have the documents within its possession, custody, or control and include in its signed amended response a statement describing the specific steps taken to locate the documents, including the location, date, and time of attempts to procure or locate the documents.
>
> d. The Court will also order that Milan 2000 will be barred from presenting in this matter any document or information not disclosed pursuant to this order that is in Milan 2000's possession, custody, or control, or that could have been uncovered through reasonable diligence.

**B.    Westfield's Motion to Compel Directed to Talmer [25]**

In its Interrogatory and Request for Production of Documents No. 9, Westfield requests the following information:

> 9. Please state whether any of the security interests for which you claim recovery of insurance proceeds from Westfield were guaranteed by the SBA, if so, please state as follows:
>
>> a. Did you make claim to the SBA for reimbursement? If so, on what date and what is the status of said claim;
>>
>> b. Please state the amount of funds received from the SBA;
>>
>> c. Please produce any and all documents pertaining to all SBA guarantees of the subject loans;
>>
>> d. Please produce any and all documents pertaining to all claims made to the SBA by you; and
>>
>> e. Please produce any and all documents pertaining to all amounts paid by the SBA.

(Docket no. 25-4 at 8-9.) In response, Talmer stated:

> Talmer objects to this request as calling for irrelevant information. The existence of SBA guarantees for Talmer's loss is irrelevant to the question of Westfield's liability for same.

(Docket no. 25-5 at 9.)

Westfield asserts that the information is relevant because it "would directly bear on the damages that Talmer seeks from Westfield as any SBA Money received by Talmer would be a set-off against Talmer's claimed damages." (Docket no. 25 at 8.) Talmer's responses can be summarized in four parts: (1) Talmer has already produced all files related to the loans; (2) there are no applicable SBA guarantees; (3) the SBA guarantees are irrelevant because SBA guarantees do not apply until *after* the lender collects on insurance policies; and (4) a 50% SBA guarantee would leave more than the $228,044 balance remaining on the loans, so there can be no double recovery. (Docket no. 29 at 4-7.)

Talmer argues that it has already provided all of the responsive documents to Westfield's requests.[3] (*Id.* at 4 ("(1) [Talmer] has already produced the entire loan file; (2) anything related to that loan is in the file").) Moreover, Talmer argues that "although there were 50% SBA guarantees at one time on certain smaller loans, there are no SBA guarantees in effect today and there never was a guarantee on the $1 million largest loan" and that "Talmer never recovered on any SBA guarantee related to the loan." If these statements are true, the Court is troubled by Talmer's response to Interrogatory and Request for Production No. 9, the substance of which should have been consistent with the statements above. By way of example, a logical extension of Talmer's version of facts

---

[3]Westfield claims that Talmer's statement is incorrect because Talmer's counsel admitted that it had not produced documents in storage or in other correspondence, but Westfield's argument is somewhat misleading. (*See* docket no. 29-2 at 2-3.) The documents referenced by Talmer's counsel are old, consolidated files not at issue in this matter. (*Id.*)

should have produced the following answers to Interrogatory and Request for Production No. 9, subparts (a) - (e): (a) Talmer made no claim to the SBA related to the loans at issue; (b) Talmer received no funds from the SBA related to the loans at issue; (c) all responsive documents have been produced as part of the loan file; (d) all responsive documents have been produced as part of the loan file; and (e) all responsive documents have been produced as part of the loan file. But neither these, nor similar responses, have been forthcoming. Therefore, for the sake of clarity and consistency, the Court will grant Westfield's Motion to Compel and order Talmer to respond to Interrogatory and Request for Production No. 9, subparts (a) - (e), in full, no later than November 9, 2012.[4,5]

### C. Talmer's Motion for Protective Order [43]

On June 6, 2012, Talmer filed its Motion for Summary Disposition.[6] (Docket no. 38.) In an effort to respond to Talmer's Motion, on June 19, 2012, Westfield served Talmer with a notice of deposition duces tecum for a bank representative under Rule 30(b)(6). (Docket no. 43-5.) The

---

[4] Although the parties frame this matter as one of relevance, the Court will not address the merits of Talmer's argument that the SBA guarantees are only paid after Talmer collects on any outstanding insurance policies. The parties have not fully briefed this issue; moreover, accepting Talmer's assertions to the Court as true, Talmer has already provided the information responsive to this Interrogatory, so the relevance of this information is no longer at issue for purposes of discovery.

[5] The Court will not order expenses pursuant to Rule 37(A)(5)(a) because the Court finds that Westfield did not confer in good faith with Talmer before filing the instant motion. Talmer argues that it was caught "totally off-guard" by the motion. (Docket no. 29 at 4.) Westfield contends that it continually conferred with Talmer and requested the responsive documents and that Talmer refused to supplement its production because Talmer believed that the documents were "completely irrelevant." (Docket no. 31 at 4.) But Eastern District of Michigan Local Rule 7.1(a) requires more than discussions regarding whether a party will comply with a discovery request; Rule 7.1(a) requires that the parties confer with respect to the Motion itself. When the respondent is unaware that the Motion is being filed, the requirements of Rule 7.1 cannot be met.

[6] The Court heard oral arguments related to Talmer's Motion on September 27, 2012. (*See* docket Minute Entry, Sept. 27, 2012.)

original notice covered several matters at issue in this case but generally focused on Talmer's purchase of the People's State Bank assets through the FDIC. (*Id.*) In its Brief in Opposition to Talmer's Motion for Protective Order, Westfield narrowed its request to two items: "(1) the identity of all transactional documents which provide Talmer the legal and contractual rights to pursue its Counterclaim against Westfield;[7] and (2) the amount paid by Talmer to the FDIC to purchase the . . . loans at issue in this case."[8] (Docket no. 46 at 7.) Westfield requested that Talmer provide these documents through a 30(b)(6) witness as part of the deposition. (*See* docket no. 43-5.) Talmer now asks the Court to issue a protective order prohibiting Westfield from taking the 30(b)(6) deposition. (Docket no. 43.)

### 1. Westfield's Request for Transactional Documents

Talmer claims that it would be subjected to an undue burden if it responded to Westfield's request for these documents because (1) Westfield already has the Purchase Agreement; (2) Westfield's legal arguments are frivolous; and (3) preparing a witness, particularly the type of senior manager that would be required to discuss this transaction, to discuss the legal and factual issues surrounding the Purchase Agreement, would be an undue burden on Talmer. (Docket no. 43 at 5-7.) In response, Westfield argues that (1) this information goes to the heart of its defense to Talmer's Motion for Summary Disposition; (2) Talmer has not specifically articulated how it is burdened

---

[7]Westfield seeks this information because it contends that the Purchase Agreement through which Talmer purchased the People's State Bank assets may not have conveyed the right to recover insurance proceeds–even if it did convey the right to recover Milan 2000's outstanding debts. (Docket no. 46 at 7.)

[8]Westfield seeks this information because it claims that if Talmer does not have a right to certain People's State Bank assets, its damages may be limited to the amount that it paid for the loans. (Docket no. 46 at 8.)

11

under Rule 26; and (3) Westfield has attempted to find alternative ways to collect the information that it seeks, but Talmer has been uncooperative. (Docket no. 46 at 12-15; Docket no. 47 at 2-3.)

Westfield admits that it has a copy of the Purchase Agreement; the agreement is available on the FDIC website. (*See* docket no. 47 at 3.) Instead, Westfield is trying to ascertain *whether this document is the only document* under which Talmer obtained rights in People's State Bank assets. (*See* docket no. 47-1 at RTA 4, 7, 8.) Westfield does not explain why it needs to depose a 30(b)(6) witness *if this is the only existing document*; as Talmer states, "Westfield does not need a deponent to tell it what the contract says." (Docket no. 43 at 11.) In an effort to obtain this information and avoid the deposition, however, Westfield asked Talmer to stipulate as follows:

> Talmer stipulates and agrees that no other agreement, assignment or other such document exists that in any way relates to or pertains to Talmer's right of any kind to recover insurance proceeds from Westfield other than the Purchase Agreement marked as Exhibit 1.

(Docket no. 46 at 13.) Talmer did not agree to this stipulation. Westfield then served its First Set of Request for Admissions asking Talmer to admit that (1) the document that Westfield had attached (which was purportedly a copy of the Purchase Agreement from the FDIC website) was a true, accurate, and complete copy of the Purchase Agreement, (2) the document was "the only writing in existence by which Talmer purchased any assets, [etc., under which] to pursue claims against Westfield [in this matter]," and (3) no other agreement exists under which Talmer acquired rights against Westfield from People's State Bank. (Docket no. 47-1 at RTA 4, 7, 8.) Talmer denied all three requests and directed Westfield to the FDIC website, indicating that it had not acquired anything directly from People's State Bank because it purchased People's State Bank's assets from the FDIC. (*Id.*)

The Court finds Talmer's position in this matter to be evasive. On one hand, Talmer argues

that Westfield has the Purchase Agreement and implies that the Purchase agreement is the only document responsive to Westfield's request. (Docket no. 43 at 10.) On the other hand, Talmer does not specifically state that no other documents exist. Instead Talmer appears to assume that because its legal position is compelling and correct that no other documents are responsive. (*See id.*) Talmer's responses to Westfield's discovery requests are similarly evasive and inferentially incomplete. (*See* docket no. 47 at RTA 4, 7, 8.) Either there are additional documents transferring People's State Bank assets to Talmer or there are not. Carefully drafting a response to avoid answering a question, and then directing the requesting party to a publicly available document, does not comport with the spirit of cooperative discovery contemplated by Rule 26.

Moreover, Talmer has failed to meet its burden of showing a clearly defined and serious injury resulting from its compliance with the requested discovery. Instead, Talmer relies on its own conclusory statements that causing senior executives to be deposed regarding a contract poses an undue burden. Talmer provides no authority or reasoning to suggest why its own employees should not be deposed regarding Westfield's defenses to Talmer's own counterclaims. To the contrary, Rule 30(b)(6) requires such testimony; it is irrelevant whether the employees with knowledge of the contracts at issue are bank tellers or senior executives. Therefore, the Court will deny Talmer's Motion for a Protective Order on this issue.

### 2. Westfield's Request for the Amount Paid to Purchase the Subject Loans.

Talmer similarly argues that it would be subjected to an undue burden by responding to Westfield's request in this regard because Westfield's argument that Talmer's claim may be limited

13

to the amount that it paid for the loans is frivolous.[9] (Docket no. 43 at 8.) Westfield argues that Talmer may be correct with regard to any claims against Milan under the notes it purchased from People's State Bank, but Talmer is now attempting to collect from Westfield under an insurance policy, which makes Talmer's argument inapplicable. (Docket no. 46 at 14.)

The Court will not address the merits of the parties' arguments which are better suited for their respective Motions for Summary Disposition. Nevertheless, for the reasons outlined above, the Court will deny Talmer's Motion for a Protective Order on this issue as well. Talmer has failed to meet its burden of showing a clearly defined and serious injury resulting from its compliance with the requested discovery on this issue.

**IT IS THEREFORE ORDERED** that Westfield's Motion to Compel [24] is **GRANTED**, subject to certain limitations:

a. Milan 2000 is ordered to answer Interrogatory No. 3 no later than November 16, 2012. Milan 2000 must make reasonable inquiry with any individuals, agents, or organizations that may be able to supply this information and must answer each subpart of Interrogatory No. 3 as completely as possible. To achieve this end, Westfield is Ordered to provide for Milan 2000's review, copies of any bank records, tax records, and other records within Westfield's possession, custody or control that may assist Milan in completing its response. Milan 2000 must specifically describe and request any documents that it would like to review no later than November 1, 2012, and Westfield must provide copies of such documents no later than November

---

[9]Talmer argues that, as a matter of contract law, if a bank or collection agency purchases a loan at a discount, "it obtains the right to collect the full value of the loan." (Docket no. 43 at 11 (citing *In re Hill*, 399 B.R. 472, 474 (Bankr. W.D. Ky. 2008)).)

16, 2012.

b.  Milan 2000 is ordered to produce any documents within its possession, custody or control in response to Westfield's Request for Production of Documents Nos. 1 - 5 no later than November 16, 2012, but Milan 2000 will not be required to produce duplicate copies of any documents already in Westfield's possession. To achieve this end, Milan 2000 must provide Westfield with a detailed list of documents that are in the possession, custody, or control of Milan 2000 or its agents, on or before November 1, 2012, at which time Westfield will have 5 business days to identify and specifically request the production of any documents that third parties have not previously produced to Westfield, which documents will be produced by Milan 2000 on or before November 16, 2012.

c.  If no such documents exist or if such documents are not in the possession, custody, or control of Milan 2000 or its agents, Milan 2000 must produce no later than November 16, 2012, amended and signed responses stating that Milan 2000 does not have the documents within its possession, custody, or control and include in its signed amended response a statement describing the specific steps taken to locate the documents, including the location, date, and time of attempts to procure or locate the documents.

d.  Milan 2000 is hereby barred from presenting in this matter any document or information not disclosed pursuant to this order that is in Milan 2000's possession, custody, or control, or that could have been uncovered through reasonable diligence.

**IT IS FURTHER ORDERED** that Westfield's Motion to Compel [25] is **GRANTED**.

Talmer must respond to Interrogatory and Request for Production No. 9 in full no later than November 9, 2012.

**IT IS FURTHER ORDERED** that Talmer's Motion for Protective Order [43] is **DENIED**.

## NOTICE TO THE PARTIES

Pursuant to Federal Rule of Civil Procedure 72(a), the parties have a period of fourteen days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. § 636(b)(1).

Dated:  October_24, 2012          s/ Mona K. Majzoub
                                  MONA K. MAJZOUB
                                  UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Order was served upon Counsel of Record on this date.

Dated: October 24, 2012           s/ Lisa C. Bartlett
                                  Case Manager